**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**HEATHER HARRIS,**

        **Plaintiff,**

**v.**                                      **Case No.  8:09-cv-670-T-TBM**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

        **Defendant.**

_____/

## ORDER

      The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits and Supplemental Security Income payments.  For the reasons set out herein, the decision is affirmed.

I.

      Plaintiff was twenty-six (26) years of age at the time of her administrative hearing in June 2008.  According to her administrative filings, she stands 5 feet, 9 inches tall and weighed 232 pounds.  Plaintiff received her GED and has some college classes and tax training.  Her past relevant work was as a tax preparer, cashier, home care giver, and customer service representative.  Plaintiff applied for disability benefits and Supplemental Security Income March 24, 2006, alleging disability as of April 1, 2002 by reason of rheumatoid arthritis and depression.  Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  The Plaintiff was represented at the hearing by a Social Security consultant and testified in her own behalf.  Additionally, a vocational expert was called by the ALJ, and Debra Warder testified on behalf of Plaintiff.  In essence, Plaintiff testified she is unable to work due to her arthritis.

Initially, Plaintiff recounted her past work and her periods of work between 2002 and 2005.  She found she could no longer perform a full day's work due to pain in her hands and legs.

She also acknowledged occasional use of methamphetamine since 2005 or 2006, but denied current use.  It was "not an every day thing," maybe once or twice a month.  She also used marijuana throughout the years to take her mind off the pain.  According to Plaintiff, she stopped using it three or four months prior to her hearing.

By her account, her arthritis is so bad that there are days when she is unable to function; she cannot stand up, brush her hair, or take care of her child due to swelling in her feet and pain in her hands and knees.  She describes the pain as chronic and so bad that on some days she does not get out of bed.  She is unable to do things normal people do like attend her child's events at school.  Plaintiff stated that she got arthritis after her son was born and that her mother helped her take care of him until he was 5 years old.  While she tries to take care of her personal hygiene, there are days when she does not even get dressed during the day due to the pain.  On those days, making it to the bathroom is even hard, and she has to use a bedpan on a fairly regular basis.  She does not use any assistive device, but she has rails in her house that she uses to pull herself around.  She borrows her grandma's wheelchair

2

about twice a month.  She lives with her son and boyfriend and does some cooking, picks up around the house, and helps with the laundry.  When doing chores, Plaintiff has to take breaks.  A friend helps her clean the house and her mother helps her dress on occasion.

Plaintiff indicated she can sit for about fifteen to twenty minutes but then has to get up.  She can stand about fifteen to twenty minutes if she is leaning on something.  She walks haltingly and only a few feet at a time.  Some days, the pain throughout her legs is so bad she cannot make it to the bathroom.

Plaintiff has taken Predinisone for ten years.  She also takes Percocet for pain, Xanex for anxiety and depression, Celexa for depression, Methotrexate and folic acid.  She also takes two other medications, but could not recall their names.  For a time, she was on Humira injections, however her insurance no longer covers them.  Plaintiff testified the medications make her sleepy, depressed and hungry.  She testified she currently weighs 209 pounds up from her former weight of 180 pounds.  She stated she is in constant pain and has difficulty getting comfortable or sleeping.  Her doctor prescribed something to help her sleep, but she does not take it because then she cannot get up to get her son to school.  Her doctor wants her to see a rheumatologist, but her insurance won't cover it.  She is depressed. She does not like to talk about her condition.  She has a problem with people staring at her because she limps a lot.  (R. 326-49).

Plaintiff's mother, Debra Ann Warder, testified that Plaintiff is in constant pain.  She spends most of her time in bed.  Ms. Warder takes Plaintiff places, shops for her, and does things for her around the house, and she also cares for Plaintiff's son.  Plaintiff has a problem

3

asking for help, and she does not like people thinking that she cannot do something.  There are some days when she cannot do things like brush her hair and her hands are so swollen that she cannot brush her teeth.  Ms. Marder has not seen the boyfriend help, nor has she seen any drug usage.  (R. 355-58).

Randolph Salmons, a vocational expert (hereinafter "VE"), testified upon an assumption of a person of Plaintiff's age, education and past work experience capable of light exertional lifting, standing/walking for four hours in an eight-hour day, sitting for six hours in an eight-hour day, with occasional pushing and pulling hand controls with the left hand and foot, and occasional climbing, balancing, stooping, kneeling, crouching and crawling, but no concentrated exposure to extreme cold and heat.  On that hypothetical, such person could do Plaintiff's past work as a tax preparer and customer service representative, as well as the job of a reservationist.  On a second hypothetical citing exhibit 4F and assuming the capacity for light exertional work with occasional climbing, balancing, stooping, kneeling, crouching and crawling, but no ladders, ropes or scaffolds, and limited push and pull with hand controls and foot controls, the VE opined such person could perform all of Plaintiff's past work.  Citing the functional assessment in exhibit 16F allowing for an occasional lifting of ten pounds but no carrying and only one hour a day for sitting, standing and walking, the VE opined that no work would be available to such person.  (R. 349-54).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are not set out herein in detail.

4

By her decision of July 24, 2008, the ALJ determined that while Plaintiff has a severe impairment related to rheumatoid arthritis, she nonetheless had the residual functional capacity to perform a reduced range of light exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past work as a tax preparer and customer service representative. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 15-24). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84

F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and

demonstrate that she has done so.  While the court reviews the Commissioner's decision with

deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton*

*v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v.*

*Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve

conflicts in the evidence and to assess the credibility of the witnesses.  *Grant v. Richardson*,

445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw

inferences from the evidence, and those inferences are not to be overturned if they are

supported by substantial evidence.  *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial

evidence, the court is not to re-weigh the evidence, but is limited to determining whether the

record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that

the claimant is not disabled.  *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233

(11th Cir. 1983).

The scope of review is limited to determining whether the findings of the

Commissioner are supported by substantial evidence and whether the correct legal standards

were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002);

*McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises five claims on this appeal.  As stated by the Plaintiff, they are as follows:

(1) The Commissioner erred in dismissing the claimant's complaints of pain;

(2) The ALJ failed to give proper weight to the opinion of the treating doctors;

(3) The Commissioner failed to properly consider the applicable listings;

(4) The record does not support a finding of Ms. Harris' ability to perform her past work on a full-time basis since her past work was part-time; and

(5) The Commissioner failed to consider the effects of claimant's obesity and depression.  (Doc. 18).

Upon consideration of the decision after a full review of the medical and other evidence, I am obliged to find that Plaintiff is not entitled to relief on these claims.

Addressing her listing issue first, Plaintiff essentially argues that her disability is established by reference to the medical evidence alone.  She urges that the ALJ failed to consider the listing at 14.09 addressing inflammatory arthritis and the listing at 1.02 addressing major joint dysfunction and that the medical evidence, particularly the lab results and x-rays support a listing level finding.  In response, the Commissioner urges that the Plaintiff fails to support her allegations either by argument or with any citation to the medical record, and thus the claim merits no further attention.

The listing of impairments in the Social Security Regulations identifies impairments which are considered severe enough to prevent a person from engaging in gainful activity.  By

meeting a listed impairment or otherwise establishing an equivalence, a claimant is

presumptively determined to be disabled regardless of her age, education, or work experience.

Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the

existence of a listed impairment.  *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

However, at this stage of the evaluation process, the burden is on the claimant to prove that he

or she is disabled.  *Bell v. Bowen*, 796 F.2d 1350, 1352 (11th Cir. 1986); *Wilkinson v. Bowen*,

847 F.2d 660, 663 (11th Cir. 1987).  In this circuit, a claimant must present specific findings

that meet the various tests listed under the applicable listing.  Where the claimant claims an

impairment that equals one of the listed impairments, he must present medical evidence which

describes how the impairment has such an equivalency.  *Bell*, 796 F.2d at 1353.  Mere

diagnosis of a listed impairment is not enough as the record must contain corroborative

medical evidence supported by clinical and laboratory findings.  *Carnes v. Sullivan*, 936 F.2d

1215, 1218 (11th Cir. 1991).  To "equal" a listing, "the medical findings must be 'at least

equal in severity and duration to the listed findings.'"  *Wilson,* 284 F.3d at 1224.

At the administrative hearing, Plaintiff's representative urged that she met the listing

at 1.02A.  Plaintiff now asserts that she meets or equals either listing 14.09 or 1.02.[1]  The

---

[1]The listing at 14.09 addresses inflammatory arthritis including rheumatoid arthritis affecting the hips, knees, ankles, shoulders, elbows, wrists/hands.  Where persistent deformity without on-going inflammation is the dominant feature of the impairment, the listing directs that the impairment should be evaluated under 1.02. See 14.00B.6. The listing at 1.02 addresses dysfunction of a joint due to any cause characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion of the affected joint and involvement of one major peripheral weight-bearing joint such as the hip or knee resulting in inability to ambulate effectively (1.02A) or involvement of one major peripheral joint in each upper extremity such as the shoulder, elbow or wrist/hand resulting in the inability to perform fine and gross movements effectively (1.02B).

contention is unsupported by specific argument or any reference to the medical evidence and accordingly is appropriately denied for that reason alone either under the applicable standard or this court's scheduling order which requires that discrete challenges be supported by citation to the record of the pertinent facts and citations to the governing legal standards. (Doc. 14).  In any event, I have reviewed the medical record in its entirety and conclude that the ALJ's determination that the medical record fails to support a listing level impairment is supported by the substantial evidence.[2]

By her second claim, she urges that the ALJ stated no proper basis for disregarding the functional assessment by Dr. Taha Dias, M.D.  By this assessment, Plaintiff was functionally disabled.  The Commissioner responds that the opinion of this doctor on disability was not entitled to special weight as such is reserved for the Commissioner and because the opinion was inconsistent with the other medical record and the findings of Dr. Linkous and three non-examining reviewing doctors.

As the decision reflects, the ALJ squarely addressed the June 2008 physical functional assessment by Dr. Dias.  (R. 20).  By this assessment, Plaintiff had severe limitations that would prevent all employment.  *See* (R. 311-17).  However, the ALJ discounted the assessment stating as follows:

---

[2]The medical record reveals diagnosis for rheumatoid arthritis. X-ray evidence revealed some osteoarthritic and degenerative changes in the left wrist and knee, respectively. (R. 256-57).  That x-ray evidence revealed nothing regarding inflammation and the evidence of inflammation is otherwise sparse.  As far as the medical record is concerned, apart from Dr. Dias's functional assessment, it lends no support to a conclusion that the conditions rendered Plaintiff incapable of effectively ambulating or manipulating as such is defined by the listing.

> The undersigned has considered the limitations given by Dr. Dias.
> However, Dr. Dias' treating notes do not indicate any restrictions.  The
> notes do not provide much information.  They do not support the limitations
> as given in light of other records and the consultative examination (Exhibit
> 3F).  Most of Dr. Dias' notes do not provide much information.  The
> doctor's own reports fail to reveal the type of significant clinical and
> laboratory abnormalities one would expect if the claimant were in fact
> disabled, and the doctor did not specifically address this weakness.  Records
> in Exhibit 11F with a legible signature from Dr. Diaz (sic) indicate that the
> claimant has rheumatoid arthritis, but the general appearance is mostly
> normal with no restrictions noted, but a few indications of MIP and PIP.
> However, his notes provide no information which would support the severe
> restrictions indicated in Exhibit 16F.  (R. 23).

Plaintiff urges that the lab results obtained by this doctor in June 2007, which strongly support

her claim for rheumatoid arthritis, provide ample support for the functional limitations

imposed and that the ALJ's reliance on notations about her "general appearance" by this

doctor regarding her were improper.

Here, the whole of the record reflects the conclusion that Plaintiff suffers from

rheumatoid arthritis.  And Plaintiff is correct that at least one lab test ordered by Dr. Dias

showed strongly positive for rheumatoid arthritis.  *See* (R. 276).  However, the mere diagnosis

of a condition alone does not establish disability.  Here, the ALJ reviewed the whole of Dr.

Dias's notes as well as the other medical record to conclude that her June 2008 functional

capacity assessment of Plaintiff was unsupported and overstated.  By my consideration, there

is substantial evidence to support that conclusion.  A review of Dr. Dias's notes, along with

the notes of every other examining or treating doctor, reflects no contemporaneous limitations

or restrictions consistent with those ultimately imposed by Dr. Dias.  As the ALJ stated, Dr.

Dias's notes failed to reveal significant clinical abnormalities in support of her very restrictive

functional assessment.  Even if, as Plaintiff urges, her "general appearance" is not a fair indicator of her condition, the notes to which the ALJ was referring reflect very few abnormal findings under any category, and I see few significant clinical findings which would support the severe limitations imposed by this doctor.  As noted above, x-rays revealed some arthritis in the left wrist and knee, but little evidence of inflammation.  Notes from other examining or treating sources did not support a debilitating condition either.  For example, notes from the Bartow Regional Medical Center in 2006 and 2007 state that Plaintiff was able to ambulate independently and perform all activities of daily living without assistance.  (R. 168, 230, 243). The consultative examination by Dr. Linkous in June 2006 found full range of motion with some tenderness in the left wrist, no motor deficiency, with grip strength 5/5 bilaterally.  As for Plaintiff's gait, the Plaintiff did not use any assistive device to walk, could tandem walk, walk heal to toe, and squat and rise, but could not hop.  The only limitations recommended by this doctor for the rheumatoid arthritis and obesity were for standing limited to six hours in an eight- hour workday and a lifting limit of 20 pounds.  (R. 176).  In a December 2007 note from Dr. Harvey at the Lakeland Regional Medical Center, he suggests that Plaintiff's condition had been amenable to treatment in the past although she had not been able to receive consistent treatment.  (R. 249).

It is correct that the ALJ must ordinarily give substantial or considerable weight to the testimony of treating doctors unless good cause is shown to the contrary.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20

C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Under this standard, good cause for rejecting a

treating source's opinion may be found where the treating source's opinion was not bolstered

by the evidence, the evidence supported a contrary finding, or the treating source's opinion

was conclusory or inconsistent with his or her own medical record.  *Phillips*, 357 F.3d at

1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir.

1987).  Here, I am obliged to conclude that the ALJ's discounted assessment of Dr. Dias is

consistent with this standard, and her rationale for doing so is supported by substantial

evidence.

  In her first stated claim, Plaintiff argues that the ALJ had no substantial basis for

disregarding her pain complaints given the medical and other record evidence which confirms

her medical condition.  In response, the Commissioner argues that Plaintiff's subjective

complaints were properly considered and discounted by the ALJ on the basis of the medical

record, her work caring for children, and the opinion of consulting examiner Dr. Linkous.

  As the decision reflects, the ALJ credited Plaintiff with rheumatoid arthritis, a

condition which could give rise to her subjective complaints.  However, the ALJ discounted

the same to the extent that Plaintiff claims she was disabled from all work.  In support of this

conclusion the ALJ cited a number of considerations.  Initially she noted that Plaintiff testified

that she babysat a friend's children along with her own child for a continuous period while the

friend was incarcerated.  Additionally, the ALJ noted that Plaintiff had income during 2004

and 2005 which appeared to reach the substantial gainful activity level.  The ALJ further

noted that while Plaintiff has received various treatments from numerous sources, her records

revealed that treatment has been generally successful in controlling her symptoms.  He also noted that Plaintiff walked without an assistive device and that Plaintiff's daily activities suggested that she was not as limited as claimed and her more recent work attempts, even if not substantial gainful activity, reflected greater functionality than Plaintiff represented.

In this circuit, where an ALJ decides not to credit a claimant's subjective testimony, the ALJ must articulate specific and adequate reasons for doing so or the record must be obvious as to the credibility finding.  *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).  Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding.  *Foote*, 67 F.3d at 1562.

By my consideration, the ALJ has adequately complied with this standard and Plaintiff fails to demonstrate otherwise.  As discussed above, the medical evidence confirmed a diagnosis for rheumatoid arthritis, but apart from the assessment from Dr. Dias, no doctor recommended limitations suggesting a disabling condition.  As the ALJ found, treatment records suggested that Plaintiff responded well to her medications.  The report in June 2006 from the consulting examiner, Dr. Clayton Linkous, M.D., gave his impression for rheumatoid arthritis and obesity but his only suggested limitations were for standing for six hours in an eight-hour day and lifting no more than 20 pounds.  None of the three state agency reviewing

13

doctors found Plaintiff with disabling impairments.  In December 2007, Dr. Harvey noted that Plaintiff had advanced rheumatoid arthritis and that it had been well-treated in the past.  As the ALJ determined, that doctor's notes did reflect a laboratory work-up which revealed a sedimentation rate only slightly above the reference range and x-rays of the wrist which showed osteoarthritic changes without erosions or soft tissue swelling suggesting inflammatory arthropathy.  X-rays of the left knee showed degenerative changes with swelling.  While Plaintiff criticizes the ALJ's reference to her work after her alleged onset date, such work as the repeated seasonal work for H & R Block and her extended babysitting, did suggest that Plaintiff was not as incapacitated as she claimed.  As set out above, it is for the ALJ to evaluate and weigh the evidence and resolve any conflicts in the record.  Where the ALJ determines to discount the credibility of the claimant, he must set forth his reasons for doing so.  Here, the ALJ has adequately done so, and Plaintiff fails to demonstrate otherwise.

Plaintiff next argues that there is no evidence to support that she could perform her former jobs of tax preparer and customer service representative full time, especially since that work did not rise to the level of past relevant work.  In response, the Commissioner urges that the Plaintiff failed to meet her burden to establish that her work as a tax preparer between 2000 and 2003 and her work as a customer service representative in 2004 and 2005, even if only part-time work, was not past relevant work as such is defined.  In any event, the VE testified that even if this work was not past relevant work, she could still perform these jobs

and he additionally identified other work that Plaintiff could perform despite her limitations and thus, no remand is warranted.[3]

Here, the decision reflects that the ALJ initially reviewed Plaintiff's earning records and concluded that her work as a tax preparer, although seasonal, constituted substantial gainful activity between 2002 and 2004.  He next noted that in 2005 she was self-employed with income which also reflected substantial gainful activity.  However, the ALJ determined not to disqualify Plaintiff on the basis of her earned income but instead on the conclusion that the medical record supported that she was capable of working.  The ALJ again considered the Plaintiff's work as a tax preparer and customer service representative at step four and step five of the evaluation process.  At both steps, the VE testified that Plaintiff could perform such work on the hypothetical presented by the ALJ.  Thus, even if such work was not considered to be past relevant work, Plaintiff was still capable of doing these type jobs as she performed them.  In addition to these positions, the VE also testified Plaintiff could perform the work of a reservationist, also a sedentary exertional job.  While the Plaintiff urges that she could not perform such jobs on a full-time basis, the ALJ concluded otherwise.  As set forth above, the ALJ fully addressed the available medical record and concluded that Plaintiff was not wholly disabled.  On a conclusion that she still could perform less than full light exertional work, the VE identified sedentary type jobs Plaintiff could still perform.  Absent some showing from the

---

[3]The Commissioner argues that the ALJ determined Plaintiff could also work as a receptionist, however, the job actually identified by the VE was that of reservationist (Dicot 238.367-014).  (R. 352).

15

Plaintiff that the ALJ erred in concluding her residual functional capacity and her capacity to perform work at a substantial gainful level, there is no showing of error on this claim either.

Finally, Plaintiff urges that the ALJ erred in failing to consider the effects of her obesity and her depression.[4]  The Commissioner responds generally that the Plaintiff failed to prove she had severe obesity or depression.  The mere fact that Plaintiff was mildly obese does not establish that she suffers any limitations that were not otherwise considered by the ALJ, and Plaintiff fails to demonstrate that her weight resulted in any limitations beyond those credited by the ALJ.  A remand on this issue would serve no useful purpose.  As for her depression, the Commissioner responds that substantial evidence supports that Plaintiff did not suffer severe depression.  While the records reflect occasional reference to depression, there is no showing that such caused any functional limitations.

To the extent that Plaintiff claims the ALJ did not consider her weight or claims of depression, the hearing transcript and the decision reflect otherwise.  At the hearing, Plaintiff indicated that she had gained considerable weight due to the prednisone she was taking for her arthritis.  She made no claim that her weight caused her any limitations.  Additionally, the record reflects the ALJ's inquiry regarding her depression and her use of Celexa.  In the decision, the ALJ noted her weight at the time of the consultative examination and Dr. Linkous's impression of obesity.  And the ALJ discounted Plaintiff's depression in the decision noting that there had been no mental health treatment.  On this record, I cannot agree that the ALJ failed to consider the effects of either condition.  As for the depression, the ALJ

---

[4]Again, the claim is made without any reference to the record or applicable standards. It is appropriately denied for that reason alone.

expressly concluded that the condition was not a severe condition.  Plaintiff wholly fails to demonstrate any error in that conclusion, either at step two or any subsequent step in the evaluation process.  By my own review of the record, there is very little reference to depression and clearly not enough to support reversing the ALJ's conclusion that this condition was simply not severe.  With regard to Plaintiff's obesity, she did not claim that her weight caused her additional limitations and she wholly fails to demonstrate on this appeal that her condition caused functional limitations over and above that assessed by the ALJ. Plaintiff is not entitled to relief on the unfounded assertions set forth in this claim.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 2nd day of September 2010.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record